**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 1 2 2015
Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on 2-12-15

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 89251-2 |
| ALAN MEIRHOFER, | ) ) | En Banc |
| Petitioner. | ) ) ) | Filed __FEB 1 2 2015__ |

GONZÁLEZ, J.—Alan Meirhofer was civilly committed under the sexually violent predator (SVP) act, chapter 71.09 RCW, in 2000. He now seeks a full evidentiary proceeding on whether he still meets the statutory and constitutional criteria for SVP commitment. Before holding such a full evidentiary proceeding, the SVP act directs trial courts to hold an initial show cause hearing to determine whether the State has presented prima facie evidence that continued commitment is justified or the detainee has presented prima facie evidence that his or her condition has "so changed" as to warrant a new evidentiary proceeding. The trial court found the State had made its showing and Meirhofer had not. We affirm.

BACKGROUND

In the late 1980s, Meirhofer was charged with several counts of brutally raping children, along with charges of burglary and kidnapping. *Meirhofer v. State*, noted at 109 Wn. App. 1057, 2001 WL 1643535, at *1. Meirhofer was implicated in several

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Meirhofer*, No. 89251-2

more child rapes. Pers. Restraint Pet. (PRP), App. B at 4-8. He pleaded guilty to several charges, apparently in return for the State dropping others. *Meirhofer*, 2001 WL 1643535, at *1. As Meirhofer finished serving his criminal sentence, the State brought SVP commitment proceedings against him under the SVP act, chapter 71.09 RCW. This act authorizes the State to civilly commit those who "suffer[] from a mental abnormality[1] or personality disorder[2] which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). At the civil commitment trial, the State submitted evidence that Meirhofer suffered from pedophilia; paraphilia not otherwise specified (NOS) nonconsent; a personality disorder with antisocial features; and alcohol and amphetamine dependence, and that he had a high risk of reoffending. Mot. for Discr. Review (MDR) (June 15, 2012), App. B at 20, 15. In 2000, a jury found beyond a reasonable doubt that Meirhofer was a sexually violent predator and the trial court ordered him civilly committed to the Special Commitment Center. *Meirhofer*, 2001 WL 1643535, at *2.

Civil commitment under the SVP act is indefinite, but the Department of Social and Health Services (DSHS) is required to have the condition of each person detained

---

[1] "'Mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8).

[2]
> "Personality disorder" means an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time and leads to distress or impairment. Purported evidence of a personality disorder must be supported by testimony of a licensed forensic psychologist or psychiatrist.

RCW 71.09.020(9).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

under the act reviewed by a qualified professional at least annually and regularly report to the court whether each detainee still meets the statutory and constitutional criteria for civil commitment. RCW 71.09.070(1); WAC 388-880-031. If the secretary of DSHS determines that a detainee does not still meet the requirements, "the secretary shall authorize the person to petition the court for conditional release to a less restrictive alternative or unconditional discharge." RCW 71.09.090(1). In such cases, "[t]he court must order an evidentiary hearing upon receipt of the petition." *State v. McCuistion*, 174 Wn.2d 369, 380, 275 P.3d 1092 (2012) (citing RCW 71.09.090(1)), *cert. denied*, 133 S. Ct. 1460 (2013). Alternatively, those civilly committed under the SVP act can petition the court for either full release or release to a less restrictive alternative than full civil commitment. RCW 71.09.090(2)(a). In such cases, the trial court will hold a show cause hearing to determine if sufficient grounds exist to hold a full evidentiary proceeding. *McCuiston*, 174 Wn.2d at 380 (citing RCW 71.09.090(2)(a)). At this show cause hearing, the State bears the burden of presenting prima facie evidence that continued commitment is appropriate. *Id.* (citing RCW 71.09.090(2)(b)); *In re Det. of Petersen*, 145 Wn.2d 789, 798, 42 P.3d 952 (2002). If it fails to do so, the court will hold a full evidentiary hearing. RCW 71.09.090(2). Alternately, the detainee may present prima facie evidence that there is probable cause to believe his or her condition has "so changed" that release is appropriate. RCW 71.09.090(2)(c)(ii); *McCuistion*, 174 Wn.2d at 382. If the detainee succeeds, the court will set a full evidentiary proceeding. RCW 71.09.090(2)(c), (3); *In re Det. of Petersen*, 145 Wn.2d at 798. At the show cause hearing, the court "must assume the truth of the evidence presented; it may not 'weigh and measure asserted

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

facts against potentially competing ones.'" *McCuistion*, 174 Wn.2d at 382 (quoting *In re Det. of Petersen*, 145 Wn.2d at 797). "At the same time, the court can and must determine whether the asserted evidence, if believed, is *sufficient* to establish the proposition its proponent intends to prove." *Id.* (citing *In re Det. of Petersen*, 145 Wn.2d at 798). While the court does not weigh the evidence, it is entitled to consider all of it. *See In re Det. of Petersen*, 145 Wn.2d at 798.

In 2005, the legislature limited the type of evidence and the grounds a court may consider when determining whether there was probable cause to believe an SVP had "'so changed'" that release might be appropriate. LAWS OF 2005, ch. 344, § 1. These amendments were in response to two cases where evidentiary hearings had been ordered based on changes in "demographic factors," such as the offender's age, which trial courts found rendered them not likely to reoffend if released. *Id.* (citing *In re Det. of Ward*, 125 Wn. App. 381, 104 P.3d 747 (2005); *In re Det. of Young*, 120 Wn. App. 753, 86 P.3d 810 (2004)). The legislature declared that "a mere advance in age or a change in gender or some other demographic factor after the time of commitment does not merit a new trial proceeding under RCW 71.09.090." *Id.* The legislature expressed concern that allowing new trial proceedings under RCW 71.09.070 and .090 based on such demographic changes "subverts the statutory focus on treatment and reduces community safety by removing all incentive for successful treatment participation in favor of passive aging and distracting committed persons from fully engaging in sex offender treatment." *Id.* To avoid disincentivizing treatment, the 2005 provisions stated that probable cause to believe someone has "'so changed'" exists only when there is a "physiological change to the person, such as

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent" or when there is a "change in the person's mental condition brought about through positive response to continuing participation in treatment." *Id.* § 2(4)(a), (b) (codified as RCW 71.09.090(4)(a), (b)(i)-(ii)). Additionally, "a change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding." *Id.* § 2(4)(c) (codified as RCW 71.09.090(4)(c)). We initially held these amendments unconstitutional on due process and separation of powers grounds, but on reconsideration, we upheld them. *McCuistion*, 174 Wn.2d at 378, 398. The United States Supreme Court denied certiorari. 133 S. Ct. 1460. The 2005 amendments and the *McCuistion* opinion are especially relevant to Meirhofer because he has declined treatment and because his risk to reoffend, as determined by actuarial tests, has largely been reduced because of his advancing age.

In the 2010 annual report to the court, the State's expert, Dr. Saari, stated he did not have sufficient information to diagnose Meirhofer with pedophilia because "there is not sufficient evidence to indicate a clear pattern of sexual attraction to prepubescent" children. PRP, App. B at 12. Dr. Saari gave Meirhofer the provisional diagnosis of "Rule Out Pedophilia." *Id.* at 11 (boldface omitted).[3] Dr. Saari diagnosed Meirhofer with paraphilia, NOS

---

[3] It does not appear that Dr. Saari meant to indicate to the court that Meirhofer did not have pedophilia, but merely that the doctor did not have sufficient evidence at the time to diagnose it. First, Dr. Saari cautioned that "I suspect that past evaluators were likely correct in their diagnostic opinion and that full disclosure of his history of sexual fantasy and sexual behavior with minor[s] would reveal the presence of a pedophilic disorder," and that "[a] sexual history polygraph and plethysmograph assessment may help to better clarify" the matter. PRP, App. B at 12. Second, the qualifier "rule out" is a term of art used in the profession. As a treatise explains:

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

hebephilia, paraphilia NOS nonconsent, and personality disorder NOS with antisocial and borderline traits. *Id.* Dr. Saari reported that the Static-99R actuarial risk assessment test suggested that offenders with similar static risk factors as Meirhofer had "a 5-year sexual recidivism estimate of about 20% and a 10-year sexual recidivism estimate of about 30%."[4] *Id.* at 13. Based on Meirhofer's dynamic risk factors, including the fact that "Meirhofer felt entitled to rape teenage boys when he could not find a way to seduce them," and his own clinical judgment, Dr. Saari concluded that it was his "professional

---

> The phrase "rule out" does not appear in DSM-IV and is not part of the vocabulary of DSM. However, it is a common expression in psychiatric diagnosis and is often seen in reports, especially from professionals with medical training or experience in medical settings. There is often some confusion among nonphysicians as to the meaning of this expression. "Rule out" is typically used to identify an alternative diagnosis that is being actively considered, but for which sufficient data has not yet been obtained. For instance, the diagnostic statement "Alcohol Abuse, rule out Alcohol Dependence," suggests that the examiner has definitely concluded there is a drinking problem; that there is definitely evidence supporting Alcohol Abuse; and that the more serious problem of Alcohol Dependence may be present, but the available evidence is inconclusive. "Rule out" can be thought of as a reminder or instruction to continue seeking the information which would allow a diagnosis to be conclusively identified or eliminated from consideration (for the present).

Alvin E. House, DSM–IV DIAGNOSIS IN THE SCHOOLS 33 (2002), *available at* http://books.google.com/books?id=MtS2LjuU5AIC&q=33#v=snippet&q=33&f=false.
[4] Static tests such as the Static-99R underestimate the probability of future sexual misconduct because they do not actually measure the probability that an offender will commit another sexual offense; they instead predict whether an offender will be caught for a new sexual offense by being arrested, convicted, or, in some cases, by self-report recidivism. *See generally* Scott I. Vrieze and William M. Grove, *Multidimensional Assessment of Criminal Recidivism: Problems, Pitfalls, and Proposed Solutions*, 22 PSYCHOL. ASSESS. 382, 384-85 (2010); *see also* Static-99R Clearinghouse, STATIC-99R SAMPLES FOR VIOLENT RECIDIVISM TABLES, *available at* http://www.static99.org/pdfdocs/static-99RViolentRecidEstimates2010-04-29.pdf (describing various sources of baseline recidivism data). Given that the vast majority of sexual crimes are never reported, let alone result in arrest or conviction, this "30%" prediction likely underestimates Meirhofer's dangerousness.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

opinion that Mr. Meirhofer appears to continue to meet the definition of a sexually violent predator." *Id.* at 11, 13, 15. Dr. Saari's 2011 report was consistent and additionally observed that Mr. Meirhofer had been recently suspended from his job in the kitchen at the Special Commitment Center after he was caught making alcohol. Dr. Saari noted in the report that Meirhofer reported he

> did not see any problem with making the alcohol, except for the fact he got caught. Prior to making the alcohol, he reportedly did not consider the potential consequences or how it might negatively affect his chances of release from the SCC. When I asked him why it is important to refrain from drinking, given his history of offending while under the influence of substances, he said he did not believe it is important for him to abstain from alcohol. More specifically, he said, "Quite frankly, I never raped anyone when I was drinking, only when I was under the influence of methamphetamine did I do that."

PRP, App. G at 9. Once again, Dr. Saari concluded that Meirhofer continued to meet the definition of an SVP.

Also in 2011, before we withdrew our first *McCuistion* opinion, a second psychologist, Dr. Rosell, opined that there was insufficient evidence that Meirhofer suffered from pedophilia, as currently defined in the academic literature, and that his risk of reoffending had dropped significantly due to his age. Dr. Rosell diagnosed Meirhofer with alcohol and amphetamine dependence and a personality disorder with antisocial traits. Perhaps sensitive to the legislature's response to *Young* and *Ward* and to the pending constitutional challenge to that response in *McCuistion*, Dr. Rosell's report said that under "pre-2005 standards," Meirhofer "no longer meets the criteria of sexual violent predator based on the lack of evidence of a current paraphilic disorder as well as the low risk found on the actuarial instruments utilized." PRP,

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

App. D at 29. He offered no opinion on whether Meirhofer met the criteria under the 2005 legislative standards.

Based on Dr. Rosell's report and our then recently published opinion in *McCuistion*, the trial court found that Meirhofer had presented prima facie evidence that "[h]is condition has so changed that he no longer meets the criteria of a sexually violent predator." PRP, App. E at 2. The trial court stayed its order pending this court's resolution of the motion for reconsideration in *McCuistion*. A few months later, this court withdrew its opinion in *McCuistion*, and in 2012, we upheld the 2005 amendments. *McCuistion*, 174 Wn.2d at 398. After we withdrew our first *McCuistion* opinion, the trial judge found DSHS had met its prima facie burden of showing that Meirhofer continued to meet the statutory definition of an SVP and that Meirhofer had failed to present sufficient prima facie evidence that he did not. MDR (June 15, 2012), App. I at 2 (Oct. 10, 2011 order). Thus, it did not order the evidentiary proceeding Meirhofer seeks. *Id.*

Meirhofer sought discretionary review of that October order and challenged his continued confinement by way of a personal restraint petition. The Court of Appeals consolidated the two cases and denied relief in an unpublished opinion. *In re Pers. Restraint of Meirhofer*, noted at 175 Wn. App. 1049, 2013 WL 3867834. We granted review to determine whether Meirhofer was entitled to an evidentiary proceeding under chapter 71.09 RCW or, if not, whether he was entitled to collateral relief.

We affirm.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

I.    APPEAL OF THE RCW 71.09.090 SHOW CAUSE HEARING

Under the SVP act, "there are two possible statutory ways for a court to determine there is probable cause to proceed to an evidentiary hearing . . . (1) by deficiency in the proof submitted by the State, or (2) by sufficiency of proof" by the detainee that he or she "no longer suffers from a mental abnormality or personality disorder" or that any mental abnormality or personality disorder "would not likely cause the prisoner to engage in predatory acts of sexual violence." *In re Det. of Petersen*, 145 Wn.2d at 798. We review the legal conclusions the trial court drew from that evidence de novo. *Id.* at 799. Meirhofer contends he succeeds on both grounds.

First, Meirhofer contends the State's evidence that he "continues to meet the definition of a sexually violent predator" was deficient. *See* RCW 71.09.090(2)(b). He stresses that the State's expert did not diagnose him with pedophilia and that an actuarial risk assessment test found his risk of reoffending to be 30% over the next 10 years, among other things. *See* PRP, App. G at 10, 12. Considering the experts' conclusions and the reasons recited in the reports, we agree with the courts below that the State has met its statutory prima facie burden. An SVP is "any person who has been convicted of . . . a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). It is undisputed that Meirhofer has been convicted of sexually violent crimes. *Meirhofer*, 2001 WL 1643535. It is also undisputed that Meirhofer has been

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

currently diagnosed by licensed forensic psychologists with both mental abnormalities and personality disorders, including paraphilia NOS (nonconsent) and personality disorder NOS with antisocial and borderline features. PRP, App. G at 10.

Meirhofer argues that because the State's experts originally testified he suffered from pedophilia and now the State's expert found insufficient evidence for that diagnosis, the State has not met its burden. His argument is unpersuasive. First, this court has affirmed commitment based on paraphilia NOS nonconsent and antisocial personality disorder, which are essentially Meirhofer's remaining diagnoses. *See In re Det. of Stout*, 159 Wn.2d 357, 363, 150 P.3d 86 (2007). Second, we rejected a similar challenge to continued civil commitment after an insanity acquittal when the detainee's diagnosis changed in *State v. Klein*, 156 Wn.2d 103, 120-21, 124 P.3d 644 (2005). While we cautioned that "'[d]ue process requires that the nature of the commitment bear some reasonable relation to the purpose for which the individual is committed,'" we found sufficient connection from the "original diagnosis of 'psychoactive substance-induced organic mental disorder' . . . and the current diagnosis of polysubstance dependence" to justify continued commitment. *Id.* (first alteration in original) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 79, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). We observed that "the subjective and evolving nature of psychology may lead to different diagnoses that are based on the very same symptoms, yet differ only in the name attached to it." *Id.* at 120. Similar principles apply here. Without more, the change from a diagnosis of pedophilia to a "rule out pedophilia" and hebephilia diagnosis is not sufficient to require a new evidentiary proceeding.

Meirhofer also argues that hebephilia may not act as a qualifying mental abnormality or personality disorder under the SVP act. He calls our attention to a recent Illinois Court of Appeals case where the court required a *Frye*[5] hearing before admitting evidence that an SVP respondent suffered from hebephilia, which is not a condition listed in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders. In re Det. of New*, 2013 IL App (1st) 111556, 992 N.E.2d 519, 372 Ill. Dec. 677, 688 (2013), *appeal granted*, 2 N.E.3d 1045, 377 Ill. Dec. 764 (2013). New had appealed his commitment arguing, among other things, that hebephilia was not a diagnosis generally accepted in the scientific community. The Illinois Court of Appeals reversed his commitment and remanded for a *Frye* evidentiary hearing, noting that "if a respondent in an SVP proceeding does not suffer from an actual mental disorder, then there is nothing to cure, and commitment is pointless." *Id.* But regardless of whether hebephilia is an accepted diagnosis in the relevant scientific community (a question we need not decide), the State presented sufficient prima facie evidence that Meirhofer has consistently suffered from paraphilia NOS nonconsent and a personality disorder. This is sufficient to show that Meirhofer "suffers from a mental abnormality or personality disorder," RCW 71.09.020(18), as required for continued confinement.[6]

The State has also met its prima facie burden of showing Meirhofer is likely to reoffend if not confined. RCW 71.09.090(2)(b). Meirhofer is correct that the actuarial

---

[5] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

[6] For similar reasons, we find Meirhofer's contention that he is entitled to a jury trial on whether he suffers from hebephilia unavailing based on the facts of this case. We recognize that the dissent finds the change in professional terminology from pedophilia to hebephilia significant. Given that Meirhofer has two other qualifying conditions, we do not find this an appropriate case to explore the issue.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

instruments the State's expert used suggest his risk of reoffense is 30% in the next 10 years. However, the SVP act does not limit experts to the results of actuarial tests and there is no requirement that "the SVP will reoffend in the foreseeable future." *In re Det. of Moore*, 167 Wn.2d 113, 125, 216 P.3d 1015 (2009). While Meirhofer is correct that we observed in a case considering the admissibly of actuarial instruments in SVP proceedings that the State "asserts [they] are more reliable than clinical judgment," we never found that they were better evidence than clinical judgment. *In re Det. of Thorell*, 149 Wn.2d 724, 757, 72 P.3d 708 (2003). Based on static and dynamic risk factors and his own clinical judgment, the State's expert opined that "there has been no apparent change in [Meirhofer's] mental condition that would indicate a lowered risk for sexual re-offense." PRP, App. G at 14. This is amply supported by the evidence reviewed in Dr. Saari's report. The State has met its prima facie burden under RCW 71.09.090(2)(b).

Second, Meirhofer contends that he has shown probable cause that his condition has "so changed" that he no longer meets the criteria for a sexually violent predator. *See In re Det. of Petersen*, 145 Wn.2d at 798; RCW 71.09.090(2)(c). Again, Meirhofer suggests that the change in diagnosis from pedophilia to hebephilia is significant. Whether or not it might be significant if it were the only diagnosis, even Meirhofer's own expert found that he suffered from a personality disorder with antisocial traits. PRP, App. D at 20. Moreover, under the statutory standards, only a "change in the person's mental condition brought about through positive response to continuing participation in treatment" is sufficient under the act. RCW 71.09.090(4)(b)(ii). Any change in Meirhofer's condition was not driven by any

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"positive response to continuing participation in treatment" as Meirhofer has refused

to participate in treatment. Instead, it appears to be driven by dispute within the

psychiatric establishment and refinement in the relevant diagnostic criteria. *See* PRP,

App. J, Ex. A (Allen Frances & Michael B. First, *Hebephilia Is Not a Mental*

*Disorder in DSM-IV-TR and Should Not Become One in DSM-5*, 39 J. AM. ACAD.

PSYCHIATRY & L. 78, 84 (2011)).

Perhaps sensitive to the ongoing legal conflict, Meirhofer's expert couched his

conclusion that Meirhofer had "so changed" as to justify further proceedings in very

limited terms:

> Mr. Meirhofer was found to be an SVP based on the diagnoses of pedophilia.
> The most recent annual review by Dr. Saari questions this diagnoses and feels
> there is a need to rule it out. He has supplemented that diagnoses with
> paraphilia NOS, hebephilia which as previously mentioned is questionable
> whether it exists as a mental abnormality as opposed to a descriptor of
> behavior.
>
> I have been asked to address whether Mr. Meirhofer's mental
> abnormality has "so changed" as to whether he continues to meet the statutory
> definition of an SVP. As mentioned, recently the Washington State Supreme
> Court has ruled that the amendments of 2005 which restricted the definition of
> "so changed" should be reversed to pre-2005 standards. Therefore, it is my
> opinion that Mr. Meirhofer no longer meets the criteria of sexual violent
> predator based on the lack of evidence of a current paraphilic disorder[7] as well
> as the low risk found on the actuarial instruments utilized.

PRP, App. D at 29. Given Dr. Rosell's reliance on Meirhofer's age in determining his

risk of recidivism, given the fact that Meirhofer has not undergone treatment, and

given the fact no expert has suggested that Meirhofer meets the current statutory

---

[7] Dr. Rosell does not explain why he rejected the paraphilia NOS nonconsent diagnosis.

*In re Pers. Restraint of Meirhofer*, No. 89251-2

requirements for an evidentiary proceeding, the trial court did not err in declining to order one.[8]

## II. PERSONAL RESTRAINT PETITION

Meirhofer also challenges his continued confinement by way of a personal restraint petition, largely reiterating his substantive arguments above. The State responded that relief by way of a personal restraint petition is not available. While we agree with the State that Meirhofer is not entitled to relief on the merits, we stress that there are no special rules prohibiting those committed under the SVP act from filing otherwise meritorious personal restraint petitions. "Personal restraint petitions are modern version of ancient writs, most prominently habeas corpus, that allow petitioners to challenge the lawfulness of confinement." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 128, 267 P.3d 324 (2011) (citing *Toliver v. Olsen*, 109 Wn.2d 607, 609-11, 746 P.2d 809 (1987)). But relief by way of a personal restraint petition is extraordinary. *See id.* at 132 (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)). A personal restraint petition is not a substitute for statutory avenues for review, and "[t]o prevent it from becoming a substitute for an appeal, and to protect the finality of judgments, this court has imposed significant threshold, prima facie burdens on the petitioner before the merits of the substantive

---

[8] The dissent suggests that Meirhofer is entitled to a new evidentiary hearing because "it is reasonably possible that his change in diagnoses could lead a reasonable trier of fact to believe that he is no longer suffering from a mental abnormality that renders him dangerous." Dissent at 11. But under the statute, such changes are a basis for an evidentiary hearing only when the "change in the person's mental condition [was] brought about through positive response to continuing participation in treatment" and not "a change in a single demographic factor." RCW 71.09.090(4)(b)(ii), (4)(c). Meirhofer has not participated in treatment, so any change in his diagnoses cannot stem from that. We upheld the facial constitutionality of this statute in *McCuistion*, 174 Wn.2d at 398. The dissent does not show that *McCuistion* should be overruled or not applied.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

claim will be considered." *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 211, 227 P.3d 285 (2010). Among other things, relief is limited to those who meet the requirements of RAP 16.4, including its requirement that the petitioner show that "other remedies which may be available to petitioner are inadequate." RAP 16.4(d). Chapter 71.09 RCW creates an avenue for review, which Meirhofer must show is inadequate in his case.

Meirhofer contends that if he is not entitled to an evidentiary hearing under RCW 71.09.090, he is entitled to relief in a personal restraint petition as a matter of due process "because new evidence shows the basis for Mr. Meirhofer's original commitment no longer exists and his continuing confinement is unconstitutional absent a jury trial on the issue of whether the State's new alleged bases for confinement are sufficient." Suppl. Br. of Pet'r at 19 (citing RAP 16.4(c)(2), (3)).[9] While we are dubious that these provisions apply given that Meirhofer is restrained pursuant to a 2000 order not before us, a personal restraint petition could conceivably be available to Meirhofer under RAP 16.4(c)(7), which authorizes the petition when "[o]ther grounds exist to challenge the legality of the restraint of petitioner." He essentially argues that the statutory avenue is inadequate because within it, he could

---

[9]

(2) The conviction was obtained or the sentence or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington; or

(3) Material facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government.

RAP 16.4(c).

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not show probable cause that he had been "so changed" as to proceed to an evidentiary hearing under RCW 71.09.090(2)(c)(ii), and that he was not entitled to have the trial judge weigh his evidence against the State's in determining whether he was still appropriately confined under RCW 71.09.090(2)(c)(1). But we effectively rejected similar arguments in *McCuistion*, 174 Wn.2d 369. McCuistion argued "that because he presented prima facie evidence that he no longer meets the definition of a SVP," as Meirhofer has, "he has both a statutory and constitutional right to an evidentiary hearing." *Id.* at 382. We disagreed. *Id.*[10]

We began with first principles. "Under the due process clause of the Fourteenth Amendment, an individual subject to civil commitment is entitled to release upon a showing that he is no longer mentally ill or dangerous." *Id.* at 384 (citing *Foucha*, 504 U.S. at 77-78). "However, once a fact-finder has determined that an individual meets the criteria for commitment as an SVP, the court accepts this initial conclusion as a verity in determining whether an individual is mentally ill and dangerous at a later date." *Id.* at 385 (citing *Burke v. Pepsi-Cola Bottling Co. of Yakima*, 64 Wn.2d 244, 246, 391 P.2d 194 (1964)). "Accordingly, where an individual was found beyond reasonable doubt to be mentally ill and dangerous at the time of his commitment trial, a showing that he no longer satisfies the constitutional criteria for confinement necessarily requires a showing of change." *Id.* (citing LAWS OF 2005 ch. 344, § 1). We rejected McCuistion's contention that he was

---

[10] McCuistion brought many challenges. Among other things, he maintained that his condition had changed because of his age and his abstention from alcohol and that he was entitled to an evidentiary hearing notwithstanding the statutory amendments that limited the grounds for such hearings. *McCuistion*, 174 Wn.2d at 377-78. We considered and rejected all of McCuistion's arguments. *Id.* at 398.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

constitutionally entitled to an evidentiary hearing based on the evidence he presented on age and recidivism, concluding that "[t]here is no substantive due process right to a full annual evidentiary hearing based upon a mere showing of a change in a single demographic factor." *Id.* Thus, he did not show that his restraint was unlawful on those grounds.

We also rejected McCuistion's contention that the 2005 amendments were facially unconstitutional because (relevant to this case) they limited detainees seeking to prove their mental condition had changed due to a positive response to treatment. *Id.* at 387. Again, similarly to Meirhofer, McCuistion argued that requirement violated the constitution because it created the possibility someone could be detained who was not "'currently likely to commit sexually violent offenses due to a mental disorder.'" *Id.* (quoting trial court record). We rejected that argument on the grounds the SVP act provided adequate constitutional protections:

> If the individual no longer meets the definition of a SVP, then "the secretary shall authorize the person to petition the court for conditional release" or "unconditional discharge" and the court "shall within forty-five days order a hearing." RCW 71.09.090(1). This statutory scheme comports with substantive due process because it does not permit continued involuntary commitment of a person who is no longer mentally ill and dangerous.

*McCuistion*, 174 Wn.2d at 388. Meirhofer makes no attempt to show that *McCuistion* should be overruled or that RCW 71.09.090 cannot be constitutionally applied to him. The State is required to review the condition of every detainee at least annually and, when challenged, present prima facie evidence that continued commitment is statutorily and constitutionally appropriate. *In re. Det. of Petersen*, 145 Wn.2d at 809-

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

10. If the secretary of DSHS determines continued commitment is not appropriate, the detainee is allowed to petition for an evidentiary hearing without having to first show cause. *Id.* at 810. Meirhofer has not shown that these statutory remedies are inadequate as applied to him.[11] Thus, his due process challenge fails. Accordingly, we dismiss his personal restraint petition under RAP 16.4.[12]

CONCLUSION

Meirhofer did not make a prima facie showing that his condition had "so changed" to justify an evidentiary hearing under the SVP act. Nor has he shown that the statutory procedures are inadequate to safeguard against deprivation of his constitutional rights. We affirm.

---

[11] We respectfully disagree with the dissent that the mere fact that Meirhofer is not entitled to relief under RCW 71.09.090(4)(b) means that he is entitled to collateral relief. *See* Dissent at 10-11. The SVP act provides at least two other ways Meirhofer could proceed to an evidentiary hearing on his claim that he no longer qualifies as an SVP. First, the secretary of DSHS could request the hearing under RCW 71.09.090(1). Second, the State could fail to present prima facie evidence that he still meets the definition of an SVP under RCW 71.09.090(2)(c). It may be that these alternative statutory mechanisms are inadequate, but Meirhofer makes no attempt to establish this.

[12] Given our resolution, we deny the State's motion to strike as moot.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

González, J.

WE CONCUR:

Madsen, C.J.

Owens, J.

Fairhurst, J.

Kulik, J.P.T.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89251-2

WIGGINS, J. (dissenting)—I agree with the majority that Alan Meirhofer has not proved his entitlement to a full evidentiary hearing under RCW 71.09.090 because subsection .090(4)(b) permits a hearing only upon proof of either of two facts: a physiological change has rendered the detainee permanently unable to commit a sexually violent act or there has been a "change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release." RCW 71.09.090(4)(b)(ii). Meirhofer has failed to prove either type of change.

Rather than arguing his condition changed physiologically or as a positive response to treatment, Meirhofer argues that the *basis for his commitment* changed when the diagnoses describing his mental condition changed. The majority, having held that Meirhofer has no recourse under the statute, ironically holds that Meirhofer has not proved that "these statutory remedies are inadequate as applied to him." Majority at 13, 18. Accordingly, the majority concludes that Meirhofer cannot bring a personal restraint petition to challenge the constitutionality of his continued detention as a sexually violent predator (SVP) because the statute provides Meirhofer with

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"'[o]ther grounds . . . to challenge the legality'" of his restraint. Majority at 15 (quoting RAP 16.4(c)(7)).

I disagree. A statutory remedy that does not allow a challenge to the constitutionality of restraint cannot be an adequate remedy. Moreover, the legislature cannot restrict the right of a person to challenge his or her restraint through a personal restraint petition. In a personal restraint petition, we provide relief for those restrained when the manner of the restraint is unconstitutional. RAP 16.4(c). It is unconstitutional to impose a civil commitment on someone who is not both mentally ill and dangerous. *Foucha v. Louisiana*, 504 U.S. 71, 75-76, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992); *In re Pers. Restraint of Young*, 122 Wn.2d 1, 27, 857 P.2d 989 (1993).

Both Meirhofer and the State presented evidence at Meirhofer's annual show cause hearing that his diagnoses have changed since his commitment hearing and that his risk of reoffending has declined substantially. These changes are significant: there is a reasonable possibility that a reasonable juror would decline to find, beyond a reasonable doubt, that Meirhofer continues to be mentally ill and dangerous. I would reverse the trial and appellate courts and remand for an evidentiary proceeding. For these reasons, I respectfully dissent.

## DISCUSSION

In order to be committed, an SVP must be diagnosed with a mental illness that renders them dangerous. Civil confinement is subject to strict scrutiny because it is a massive curtailment of liberty, *Young*, 122 Wn.2d at 26. Liberty can be curtailed only by a narrowly drawn, compelling state interest. *State v. McCuistion*, 174 Wn.2d 369,

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

275 P.3d 1092 (2012), *cert. denied*, 133 S. Ct. 1460, 185 L. Ed. 2d 368 (2013). A state's interests are narrowly tailored to justify civil commitment only when the state can demonstrate a person continues to be mentally ill and dangerous. *Foucha*, 504 U.S. at 75-76; *Young*, 122 Wn.2d at 27. Without a finding of scientifically accepted mental illness and dangerousness, SVP commitment would constitute double jeopardy, continuing to punish those who have already served a sentence for their criminal behavior. *See Young*, 122 Wn.2d at 71 (Johnson, J., dissenting). Meirhofer's diagnoses have changed since his commitment trial.

I.    Relief under a Personal Restraint Petition

The SVP statute does not contemplate the situation before us. A state cannot continue to confine someone who is no longer mentally ill and dangerous. *Id.* The statute addresses this by providing periodic review and release mechanisms for individuals. RCW 71.09.090. If the detainee has changed through treatment or physical injury, he or she is entitled to a new hearing to determine if he or she continues to meet the definition of an SVP. RCW 71.09.090(4). However, even if Meirhofer's condition has not changed as a result of treatment, the change in his diagnoses may mean that he is no longer mentally ill and dangerous.

Contrary to the State's assertions, petitioners are not limited to challenging their confinement through statutes that do not contemplate their circumstances. Importantly, personal restraint petitions are not motions for reconsideration and they are not substitutes for direct review; the relief they seek is collateral. "The whole purpose of collateral review is to provide a forum for potentially meritorious prisoners'

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

claims." *In re Pers. Restraint of James*, 96 Wn.2d 847, 855, 640 P.2d 18 (1982) (Utter, J., concurring). "Though it does tax the judicial system to provide such collateral review, its proven historical value looms much larger than the particular economic exigencies with which we as judges are now beset." *Id.* (footnote omitted).

When alternative grounds of relief are inadequate and a petition is not barred by RCW 10.73.090, RAP 16.4 unconditionally allows persons under restraint to raise constitutional claims. *James*, 96 Wn.2d at 853; RAP 16.4(a). Here, the alternative grounds for relief are inadequate: Meirhofer argues that his diagnoses changed, altering the justification for his commitment. Pers. Restraint Pet. (PRP) at 8. The statute contemplates relief only in cases in which the *condition* of the person has changed, not changes in the *diagnoses* justifying commitment.

To challenge confinement through a personal restraint petition, a detainee must present a sufficiently significant change, such that a reasonable juror could conclude that the detainee is no longer mentally ill and dangerous. Meirhofer's restraint may be unlawful because the basis for Meirhofer's original commitment no longer exists.

II. Change in Meirhofer's Diagnoses

The court will grant relief in a personal restraint petition if the petitioner is under restraint and the restraint is unlawful. RAP 16.4(a); *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010). Meirhofer demonstrates two reasons why he is unlawfully restrained and entitled to relief. First, Meirhofer's current diagnoses are different from the original diagnoses that the jury used to classify him

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

as an SVP. Second, two of Meirhofer's diagnoses are not accepted by the medical community.

### A. *Meirhofer's diagnoses have changed since his commitment trial*

Two licensed psychologists evaluated Meirhofer prior to his commitment trial; both diagnosed him with pedophilia and amphetamine dependence. In addition to those diagnoses, one of the psychologists diagnosed Meirhofer with paraphilia, not otherwise specified (NOS)-nonconsent, and the other diagnosed him with personality disorder, NOS, with antisocial traits. Meirhofer continued to be evaluated annually for nine years with similar diagnostic results: (A) pedophilia, (B) paraphilia, NOS, nonconsent, and (C) personality disorder, NOS, antisocial.

In 2010, Meirhofer's diagnoses changed. The State's expert diagnosed him with: (not-A) "Rule Out Pedophilia," (B) paraphilia, NOS, nonconsent, (C) personality disorder, NOS, antisocial, and (D) paraphilia, NOS, hebephilia. PRP, Apps. B, G. In addition, an expert retained by Meirhofer made two diagnoses, neither of which was a sexual disorder. After reviewing the commitment documents, interviewing Meirhofer, and using actuarial assessments, Meirhofer's expert diagnosed him with (1) alcohol dependence and amphetamine dependence, remission in controlled environment and (2) personality disorder, NOS, with antisocial traits by history. PRP, App. D.

We can chart these diagnoses and their consequences, thus:

Original diagnoses: A + B + C = sexually violent predator

2010-11 diagnoses: not-A + B + C + D = ?

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The State's position is that (A + B + C) yields exactly the same result as (not-A + B + C + D): therefore, Meirhofer is still an SVP. The State's position is fuzzy logic, or perhaps fuzzy psychology.

### B. Meirhofer is currently confined for "mental illnesses" that are not recognized by the medical community

The majority justifies Meirhofer's continued confinement by relying on mental illnesses that are not accepted by the majority of the scientific community. However, the mental illness must be a legitimate illness widely recognized by the psychiatric community. This is made clear in *Kansas v. Hendricks,* in which the United States Supreme Court ruling upheld the Kansas SVP commitment scheme in a five-to-four decision. 521 U.S. 346, 358, 117 S. Ct. 2072, 2080, 138 L. Ed. 2d 501 (1997). Although divided on the holding, all nine justices agreed that civil commitment is constitutional only if we can distinguish individuals who are mentally disordered from those who are mere criminals. *Id.* at 360 (the disorder must be one that "the psychiatric profession itself classifies as a serious mental disorder."), 373 (Kennedy, J., concurring) (confinement cannot be based on a mental abnormality that is "too imprecise"), 375 (Breyer, J., dissenting) (the statute is constitutional, inter alia, because pedophilia is a "serious mental disorder").

Science must have "gained general acceptance in the particular field in which it belongs" before it is admitted in trial. *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013, 1014 (1923). One way to determine "general acceptance" with respect to psychiatric disorders is to refer to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(DSM). *See, e.g., Hall v. Florida*, __ U.S. __, 134 S. Ct. 1986, 1991, 1994, 2000, 188 L. Ed. 2d 1007 (2014) (determining the meaning of "intellectual disability" using the DSM); *State v. Greene*, 139 Wn.2d 64, 71, 984 P.2d 1024 (1999) (the DSM is an authoritative source which "'reflect[s] a *consensus* of current formulations of evolving knowledge' in the mental health field.'" (quoting *State v. Greene*, 92 Wn. App. 80, 98, 960 P.2d 980 (1998) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at xxvii (4th ed. 1994) (DSM–IV))).[1] In 2010, the State's expert diagnosed Meirhofer with two disorders that are not in previous or current versions of the DSM: (1) hebephilia and (2) paraphilia, NOS, nonconsent.[2] *See* DSM–IV at xxvii; AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 566-67 (4th rev. ed. 2000) (DSM–IV–TR); AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 697 (5th ed. 2013) (DSM-5). Likewise, the international standard diagnostic tool does not include a code for hebephilia or paraphilia, not otherwise specified, nonconsent. World Health Organization, International Statistical Classification of Diseases and Related Health Problems § F65.4 (10th rev. ed. 2013) (ICD-10), *available at* http://www.cdc.gov/nchs/data/dvs/2e_volume1_2013.pdf.[3] When neither

---

[1] It would be an overstatement to say that only disorders listed in the DSM constitute a mental illness under which a person can be committed as an SVP.

[2] Hebephilia and paraphilia, NOS, nonconsent describe sexual urges, which, by themselves are not dangerous. Only if these urges are acted on do they become a serious crime. Allen Frances & Michael B. First, *Hebephilia Is Not a Mental Disorder in DSM-IV-TR and Should Not Become One in DSM-5*, 39 J. AM. ACAD. PSYCHIATRY & L. 78, 84 (2011).

[3] The ICD-10 does include "pedophilia," defined as "[a] sexual preference for children, boys or girls or both, usually of prepubertal or early pubertal age." ICD-10, § F65.4.

the American psychiatric community nor the international medical community recognizes a disorder, we should not do so either.

Paraphilia, NOS, nonconsent and hebephilia are not listed in the DSM-IV or DSM-5. The essential features of paraphilia are "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons . . . ." DSM–IV–TR at 566.[4] The explicit diagnosis of "Paraphilia Not Otherwise Specified" applies to paraphilias that are less frequently encountered, such as necrophilia, sexual attraction to corpses and klismaphilia, receiving sexual pleasure from introducing liquids into the rectum or colon. *Id.* at 576 (boldface omitted). The diagnosis "paraphilia not otherwise specified nonconsent" is not included in the list of paraphilias nor was it adopted in the DSM-5. In fact, the DSM-5 explicitly rejected "'coercive paraphilia'" as a diagnosis. Allen Frances, *Should Having Antisocial Personality Qualify a Rapist for SVP Commitment?*, PSYCHIATRIC TIMES, July 15, 2011, http://www.psychiatrictimes.com/couch-crisis/should-having-antisocial-personality-qualify-rapist-svp-commitment. Similarly, "hebephilia," defined as attraction to pubescent children, is not listed in the DSM-5 or previous versions. The DSM-5 Sexual Disorders Workgroup considered adding hebephilia to the pedophilia category but explicitly rejected the addition because it was based on imprecise and incomplete

---

[4] Paraphilia has eight categories: exhibitionism, fetishism, frotteurism, pedophilia, sexual masochism, sexual sadism, transvestic fetishism, and voyeurism. DSM-IV-TR at 566-67; *see also* DSM-5 at 685-705.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

research. Allen Frances & Michael B. First, *Hebephilia Is Not a Mental Disorder in DSM-IV-TR and Should Not Become One in DSM-5*, 39 J. AM. ACAD. PSYCHIATRY & L. 78, 82-84 (2011).[5]

III.     Meirhofer Is Entitled to an Evidentiary Hearing

The majority dismisses Meirhofer's personal restraint petition on the basis of Meirhofer's 2000 restraint order, this court's decision in *McCuistion*, and an inaccessible avenue for statutory relief. I address these arguments in turn.

Relief is available under RAP 16.4 because Meirhofer is currently restrained. The majority states that RAP 16.4(c)(2) and (3) likely do not apply because Meirhofer's 2000 restraint order is "not before us." Majority at 15. However, Meirhofer is challenging his current confinement; he is not challenging the 2000 commitment order. A state's interests are narrowly tailored to justify civil commitment only when the state can demonstrate a person continues to be mentally ill and dangerous. *Foucha*, 504 U.S. at 75-76; *Young*, 122 Wn.2d at 27. Annual review is one way of ensuring that the "'nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.'" *Jones v. United* States, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972)). But it is not the only way. Meirhofer is lawfully subject to civil restraint only so long as he continues to be both mentally ill and

---

[5] The proposed distinction between pedophilia and hebephilia was narrow. Pedophilia describes those individuals who are attracted to prepubescent children (those with downy pubic hair or no pubic hair), while hebephilia would have described those who are attracted to pubescent children (or those with coarse pubic hair). Frances & First, *supra*, at 83.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

dangerous; his current restraint cannot rest solely on the 2000 order. *Foucha*, 504 U.S. at 75-76; *Young*, 122 Wn.2d at 27. As such, he may seek relief under RAP 16.4(c).

The majority incorrectly relies on this court's decision in *McCuistion* to deny Meirhofer a constitutional right to an evidentiary trial. Majority at 15-16. While the majority correctly reads paragraph 6 of that decision in noting that McCuistion brought "many challenges," majority at 16 n.10, it overlooks the conclusions the trial court reached after considering those arguments, recited in paragraph 7:

> The trial court dismissed Dr. Coleman's report as "essentially a re-argument of the original finding that Mr. McCuistion is a sexually violent predator" and reasoned that Dr. Coleman's disagreement "with past examiners and fact-finders does not, itself, make his opinion the correct one." The court further explained that "[t]he change in his behavior within the confines of a secure facility does not demonstrate that his mental disorder has been changed in any way."

*McCuistion*, 174 Wn.2d at 377-78 (alteration in original) (citations omitted). Furthermore, the majority ignores the grounds for our decision—we specifically concluded that McCuistion's argument consisted of little more than a collateral attack on the original finding that McCuistion was an SVP and that his other arguments were merely a series of "vague assertions," "bare assertion," and declarations that, even if we were to consider, would have been insufficient to make a prima facie showing of change. *Id.* at 382-84. *McCuistion* is distinguishable from Meirhofer; Meirhofer does not challenge his initial commitment, and Meirhofer's change in diagnosis could lead a reasonable juror to conclude he is no longer mentally ill and dangerous.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Finally, we disagree with the majority's dismissal of Meirhofer's personal restraint petition under RAP 16.4(d) because, according to the majority, the secretary of the Washington State Department of Social and Health Services (DSHS) can authorize the detainee to petition for conditional release without first having to show cause. Majority at 17-18; *see also In re Det. of Petersen,* 138 Wn.2d 70, 81, 980 P.2d 1204 (1999). The secretary of DSHS does not provide a meaningful avenue of relief that is sufficient to preclude Meirhofer from seeking relief under RAP 16.4(d). It would violate due process to allow DSHS to preclude a detainee from accessing the courts. The jailor cannot also be the independent judiciary.

## IV. Meirhofer Is Entitled to Relief

An SVP may challenge confinement through a personal restraint petition when changes occur that fall outside the statute. It is a question of fact whether a change in the diagnoses leads to the conclusion that the SVP is no longer mentally ill and dangerous. I would hold that if a detainee presents a sufficiently significant change, such that there is a reasonable possibility that a trier of fact could find the person is no longer suffering from a mental abnormality that renders him or her dangerous, then the detainee is entitled to a new evidentiary hearing to determine if he or she continues to meet the constitutional criteria for confinement.

Meirhofer meets the test: it is reasonably possible that his change in diagnoses could lead a reasonable trier of fact to believe that he is no longer suffering from a mental abnormality that renders him dangerous. In considering Meirhofer's case, we

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

examine the evidence that would be presented to the jury to make the case that Meirhofer is no longer mentally ill and dangerous.

The jury would consider if Meirhofer continues to be mentally ill. The jury would be told that Meirhofer was diagnosed with paraphilia, NOS, nonconsent, and paraphilia, NOS, hebephilia. They would learn that neither diagnosis is found in the pages of the DSM. They would hear of the controversial nature of these two diagnoses and the rejection of both by the national and international psychiatric communities. The jury would then consider Meirhofer's third diagnosis, antisocial disorder, and would hear that the DSM assigns antisocial personality disorder to individuals who habitually violate the rights of others without remorse. The definition includes four diagnostic criteria and seven subfeatures, including failure to obey the laws. The jury would be told that under this assessment, Meirhofer will likely never lose the diagnosis of antisocial personality disorder, regardless of his participation in treatment. They would probably be told that the United States Supreme Court explicitly rejected the assertion that a person with previous criminal history plus a diagnosis of "antisocial personality that sometimes leads to aggressive conduct . . . may be held indefinitely." *Foucha,* 504 U.S. at 82. Notably, the jury would not hear that Meirhofer is a pedophile, a label widely recognized and associated with egregious criminal behavior.

The jury would also consider whether Meirhofer is still dangerous. They would hear that he was convicted in 1988 and served a 9-year prison sentence, after which he was confined at the Special Commitment Center on McNeil Island for 14 years.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

They would be shown actuarial instruments[6] that predict his likelihood of reoffending. They would be told that the State's expert predicted a likelihood of reoffending between 20 percent and 30 percent, down from 92 percent during his commitment trial. Meirhofer's own expert would confirm this score. The jury would be told that the State's psychologist, despite his actuarial assessment, believes that Meirhofer is still dangerous because of his criminal actions nearly 27 years prior. They would be told that his risk assessment will never drop to zero because of his previous criminal behaviors.

Given all the evidence, the jury would weigh and consider if Meirhofer continues to have a mental abnormality that renders him dangerous, beyond a reasonable doubt. Beyond a reasonable doubt is the highest standard of proof, meaning that the jury must decide that there is no doubt that Meirhofer continues to be mentally ill and dangerous. A jury might find that the State has carried this heavy burden of proof, but there is a reasonable possibility that the jury would hold to the contrary and that Meirhofer would be released. Regardless, due process requires a hearing to determine whether the significant change in Meirhofer's diagnoses means that he is no longer an SVP.

---

[6] An actuarial instrument is an empirical tool that estimates recidivism rates of sex offenders by weighing a number of risk factors. The offender receives a score of one or zero based on the presence or absence of the risk factor, the total is then added up, and the total score represents the offender's risk of future offense. The weightiest risk factor is the number of prior sex offenses. *See generally* DENNIS M. DOREN, USING RISK ASSESSMENT INSTRUMENTATION, IN EVALUATING SEX OFFENDERS: A MANUAL FOR CIVIL COMMITMENTS AND BEYOND 103 (2002); *In re Det. of Thorell*, 149 Wn.2d 724, 753, 72 P.3d 708 (2003).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Meirhofer's case might be unusual. Not all changes in diagnosis will require relief under a personal restraint petition. For example, I agree with the majority that the detainee in *Klein* would not be afforded a new proceeding under the test we propose here. *State v. Klein*, 156 Wn.2d 103, 124 P.3d 644 (2005). Klein, an insanity acquittee, was originally diagnosed with psychoactive substance induced organic mental disorder, a mental disorder induced by using one drug. Her diagnosis was later changed to polysubstance dependence, a dependence on many drugs. *Id.* at 120. The court concluded that Klein's diagnoses are based on "the very same symptoms[ and] differ only in the name attached to it." *Klein*, 156 Wn.2d at 120-21. The change from dependence on one drug to many drugs does not give rise to a reasonable possibility that a reasonable trier of fact would determine that Klein no longer suffered from a mental illness that made her dangerous.

Unlike Klein's circumstances, Meirhofer's diagnostic change removed one of his original diagnoses (not-A) and added a nebulous new diagnosis (D). In contrast, Klein's diagnosis could be represented as a change in diagnosis from (A) to (A+). Therefore, I would remand for an evidentiary hearing to determine if Meirhofer continues to meet the criteria for confinement. We cannot live in the land of make-believe, where fictitious roads for relief exist and we pretend that a change in diagnosis makes no difference. The cornerstone of our system is due process—we must continue to believe in the power of the jury to make a determination for the community. A jury should determine if, beyond a reasonable doubt, Meirhofer continues to meet the criteria for commitment.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Given the reasonable possibility that a trier of fact could determine Meirhofer's restraint is unlawful, the evidentiary hearing should be granted. This test would not empty the Special Commitment Center at McNeil Island of its detainees, but it would provide an evidentiary trial for a subset of detainees whose situations fall outside of the SVP statute.

## CONCLUSION

Meirhofer's diagnoses have sufficiently changed in a manner other than what is detailed in the SVP statute. A jury has not found that these conditions alone support a finding that civil commitment is the least restrictive means to adequately protect the community. Under the personal restraint petition analysis, I would hold that Meirhofer is entitled to an evidentiary hearing to determine if the change in diagnoses justifies Meirhofer's continued indefinite confinement under the statute.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Therefore I dissent.

Wiggin, J.

Geoff McCld, J.

Stepn, J.

16