# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>ANDREW A. VEJAR,<br><br>                  Respondent. | No. 62596-2-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — On review, the State challenges the trial court's determination after a probable cause hearing that the State failed to present prima facie evidence that Andrew A. Vejar is a sexually violent predator (SVP) and the trial court's denial of the State's motion for reconsideration. Specifically, the State argues that the trial court erred in finding the State failed to present prima facie evidence that Vejar's mental abnormality would make him commit acts of predatory sexual violence.

Because the trial court must not weigh evidence in a probable cause hearing and because the State presented evidence that, if believed, demonstrates that Vejar's mental abnormality would make him more likely than not to commit a sexually violent offense, we hold that the State presented prima facie evidence that Vejar's mental abnormality would cause him to commit acts of predatory sexual violence. Accordingly, we reverse the trial court and remand for further proceedings.

FACTS

A.    BACKGROUND

1.    1999 Conviction

In 1999, Vejar was convicted of first degree rape, first degree attempted rape, and first degree kidnapping, and sentenced to over 20 years in prison and three years of community supervision. Vejar and a friend held a woman at gunpoint, ordered her into their car, and drove off. In the car, Vejar and his friend handcuffed her and took turns digitally penetrating the woman's vagina. At one point, Vejar pulled the woman onto his lap in an attempt to have intercourse with her.

Vejar and his friend noticed a police car following them, and the police subsequently pulled them over. Vejar instructed the woman to put on her pants and "'play it cool, or it would turn into a blood bath.'" Clerk's Papers (CP) at 70. The woman did so, and as the police officer approached, she heard Vejar say, "'Oh my God, the video camera.'" CP at 70. The woman realized that Vejar and his friend had taped the sexual assault.

When the police searched Vejar's vehicle, they found "two pairs of metal handcuffs, a black hood, a video camera, a video tripod, latex gloves, a Marksman Air Gun, [and] knives," among other items. CP at 70. Additionally, footage from the video camera showed the woman handcuffed "and being digitally penetrated by a person wearing a latex glove." CP at 70.

Vejar alleged the encounter was consensual. Vejar admitted that at one point, he grabbed the woman's "rear end[] and took pictures of her bottom." CP at 70.

2.      2008 Convictions

In February 2008, while under custody of the Department of Corrections (DOC), Vejar was charged with "Abusive Sexual Contact with Staff" and "Assault on Staff." CP at 47. Vejar had approached a female corrections officer from behind "and ran into her hard enough to almost knock her over." CP at 47. He then pinched her buttocks. Vejar told the corrections officer he had not seen her. Vejar was found guilty of abusive sexual contact.

In August 2008, Vejar was again charged with "Abusive Sexual Contact with Staff" and "Sexual Assault on Staff." CP at 48. Apparently, Vejar had followed another female corrections officer and touched her buttocks. The corrections officer initially thought it was an accident. However, Vejar continued to follow her and touched her buttocks again, at which point the corrections officer determined Vejar's contact was not accidental. Vejar was found guilty of both charges.

3.      Sex Offender Treatment Programs

In 2018, Vejar participated in a DOC Sex Offender Treatment Program (SOTP). He successfully completed the SOTP. As part of the SOTP, Vejar also participated in "specialty adjunct groups," including one called "Healthy Attitudes Toward Women." CP at 49. Vejar acknowledged "that he had been hostile when interacting with women, and his continued hostile thoughts acted as confirmation bias." CP at 49.

Following Vejar's completion of the treatment program, Vejar and the program identified certain areas as "a high treatment need." CP at 50. Under the category "Hostility Toward Women," the program noted that Vejar "used derogatory language toward females" and he "viewed women as sexual objects." CP at 50. Under the category "Negative

Emotionality/Hostility," the program noted that Vejar believed his sentence was "unfair." CP at 50. Under the category "Attitudes Supportive of Sexual Assault," identified as an ongoing treatment need, Vejar stated that he believed the female corrections officers he assaulted were flirting with him, smiling at him, and he had interpreted "the females' behaviors, dress, and speech as indicators of them wanting to have sex." CP at 51.

In 2020, while on community custody, Vejar participated in a community SOTP. He also successfully completed the community SOTP. Vejar was released from community custody supervision in December 2022.

4.     2023 Convictions

In January 2023, Vejar assaulted two girls and a young woman, ages 17, 12, and 22, by grabbing their buttocks. First, on January 3, Vejar approached a 17-year-old girl while she walked alone to school. He followed her on foot, closed the distance between them, and grabbed her bottom with his hand before fleeing the area. Surveillance footage from cameras in the area captured the assault. Next, on January 25, Vejar approached a 12-year-old girl who was walking alone to a bus stop. He again closed the distance between them and grabbed her bottom with his hand. Finally, on January 27, Vejar followed a 22-year-old woman who had been on a walk. He ran up behind her, "grabbed her by her hips with both hands, slid his hands under her buttocks, and squeezed them very hard." CP at 72. In each incident, Vejar wore a medical face mask to hide his identity.

On January 30, a woman called the police station to report that she had seen a photograph posted of a suspect in a sexual assault case and that photograph was of Vejar. She stated that she

had briefly dated Vejar, but she broke up with him when he allegedly attempted to put his phone up the skirt of her 13-year-old daughter to videotape her crotch.

On February 1, the police arrested Vejar. After Vejar's arrest, the police obtained a warrant to search Vejar's phone. On the phone, the police discovered "'coded'" notes where it appeared that Vejar journaled his observations of women and the assaults. CP at 73. For instance, one note stated: "'1-3-23: BJ Good Butt Asian in Gray Sweats/ Lincoln Student/ Good Handfuls,'" and another stated: "'1-25-23: BJ White Schoolgirl in black pjs off 56th safeway/ Good Handfuls.'" CP at 73. The police believed the notes referred to the assaults on January 3 and January 25. The police also noted that there were several other similar notes, leading them to believe "'there were several other victims who did not report incidents.'" CP at 73.

Additionally, police found multiple sex-related search terms on Vejar's phone. Those terms included "'girl licking big butt,'" "'big butt groped,'" "'[old] man gropes big butt,'" "'big butt upskirt,'" "women treated like sh[**] on porn,'" "girl licking several a[****],'" and "'pissing in big butt,'" among several others. CP at 73. Police also found over 5,600 pornographic images reflective of the above-listed search terms, along with homemade videos focusing on women's rear ends. Finally, police found searches for the start times of the local high school and middle school.

On February 2, Vejar was charged with failure to register as a sex offender and three counts of fourth degree assault for the January 2023 incidents. Initially, Vejar denied the accusations. But when Vejar was told surveillance footage showed him following one of the victims and global positioning system data from his phone showed him in the same location as another victim at the time of the assault, he pleaded guilty. Vejar wrote in a statement on plea of guilty:

5

> Between 1/03/23 and 1/30/23 I failed to register as a sex offender as I was required to do after having been convicted of a felony sex offense. On 1/03/23, in Pierce County, Washington, I assaulted M.P.L. when I made unwanted contact with her buttocks. On 1/25/23 I assaulted J.J.W. when I made unwanted contact with her body. On 1/27/23, I assaulted A.E.B. when I made unwanted contact with her buttocks.

CP at 73. Vejar was sentenced to a term in county jail with a release date of August 1, 2023.

B.  SEXUALLY VIOLENT PREDATOR PETITION

Shortly before Vejar's scheduled release, the State filed a petition alleging that Vejar was an SVP. The State moved for a probable cause hearing.

In support of its petition, the State attached a forensic psychological evaluation of Vejar, dated March 21, 2023, along with an evaluation update, dated July 7, 2023. The forensic psychological evaluation and update were both conducted by Dr. Marianne Davis, a licensed psychologist.

The State had asked Dr. Davis to evaluate (1) whether Vejar had a mental abnormality or disorder that predisposed him "to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others," and (2) whether by reason of the mental abnormality, Vejar was likely to engage in predatory acts of sexual violence. CP at 25. As part of the evaluation, Dr. Davis reviewed over 3,000 pages of documents, including Vejar's medical history, criminal history, and other records, and conducted actuarial and dynamic risk assessments. Vejar refused an interview with Dr. Davis.

1.      Mental Abnormality

Dr. Davis opined that Vejar had a mental abnormality or personality disorder as defined in chapter 71.09 RCW.[1] Specifically, Dr. Davis diagnosed Vejar with antisocial personality disorder, frotteuristic disorder, and fetishistic disorder (partialism/pygophilia). Frotteuristic disorder is when an individual has "recurrent and intense sexual arousal from touching or rubbing against a nonconsenting person." CP at 78 n.4. Fetishistic disorder includes when an individual has "a highly specific focus on nongenital body part(s)." CP at 78 n.5. Partialism, a particular type of fetishism, is "an exclusive sexual focus on a particular body part." CP at 78 n.5. Pygophilia is an "intense interest in, and sexual attraction to, women's buttocks." CP at 79.

For the diagnosis of antisocial personality disorder, Dr. Davis based the diagnosis on Vejar's extensive criminal history—including a first arrest at age 13—and current adult antisocial behaviors. Vejar's antisocial behaviors included repeated arrests, aggressive behavior, and lack of remorse. For each behavior, Dr. Davis identified specific conduct that demonstrated the behaviors.

Dr. Davis diagnosed Vejar with frotteuristic disorder based on the incidents in 2008 and 2023, where he pinched or grabbed women's and girls' buttocks. Dr. Davis stated, "That Mr. Vejar has engaged in frotteuristic behavior repeatedly and with multiple victims indicates both that he found the conduct gratifying and that he experienced urges to repeat the experiences." CP at 78. Further, Dr. Davis stated that the fact that the January 2023 incidents all occurred within the same month indicated Vejar's urges were intense. Finally, Dr. Davis stated that "[w]hile there is

---

[1] Chapter 71.09 RCW pertains to sexually violent predators.

no direct evidence Mr. Vejar was sexually aroused by his assaults on the victims," it was possible

to infer sexual arousal based on the sexual nature of the assaults; the search terms found on his

phone; and Vejar's admission during the SOTP that the assaults on the correctional officers were

sexual. CP at 78.

Dr. Davis based the diagnosis of fetishistic disorder on Vejar's conduct with the

correctional officers, the three January 2023 assaults, and the search terms found on Vejar's phone.

Dr. Davis also noted concern and alarm about the search terms found on Vejar's cell phone; the

derogatory, demeaning, and degrading nature of the activities resulting from the searches; and the

contemptuous manner in which Vejar referred to at least two of his victims in the notes on his cell

phone.

Finally, Dr. Davis took Vejar's 1999 convictions into consideration. Dr. Davis considered

whether Vejar might also meet the criteria for paraphilic disorder, which "involves [an] individual

enjoying and becoming sexually aroused by forcing a victim to have sex with him." CP at 79 n.6.

However, based on the information reviewed, Dr. Davis was unable to make a separate diagnosis

of a paraphilic disorder. Nevertheless, Vejar still exhibited "paraphilic urges." CP at 80. Dr.

Davis stated:

> That Mr. Vejar has serious difficulty controlling his pygophilia, and,
> concomitantly, serious difficulty controlling his urges to grab the buttocks of
> female strangers, is demonstrated by the fact [that] he served 20 years in prison on
> a conviction for rape and yet sexually reoffended. . . . That Mr. Vejar has serious
> difficulty controlling his paraphilic urges is also demonstrated by the fact [that] he
> completed sex offender treatment programs both within the DOC and in the
> community. Even with the benefit of such extensive treatment, he reoffended. . . .
>
> Mr. Vejar is emotionally impaired in that he failed to appreciate the harm he was
> causing his victims. As was made clear in the videotaped interview with [police]
> detectives, he had no concern at all for the trauma he caused the three victims of

8

his most recent assaults. As such, Mr. Vejar has demonstrated he does not respond appropriately . . . to the fear and protests of the individuals he is harming.

CP at 80.

2.    Likelihood of Engaging in Predatory Acts of Sexual Violence

Dr. Davis also opined that, by reason of Vejar's mental abnormality, he was more likely than not to engage in predatory acts of sexual violence. To assess Vejar's risk of re-offense, Dr. Davis used two actuarial risk assessment tools—the Static-99R and the Static-2002R.

On the Static-99R, Dr. Davis calculated Vejar to be a 6, "which places him in the well above-average risk category for being charged or convicted of another sexual offense." CP at 82. With a score of 6, Vejar is in the 94th percentile as compared to other male sex offenders, and he has a sexual recidivism rate 3.8 times higher than the typical sex offender. Offenders that fall within Vejar's risk category "have been found to sexually reoffend at a rate of 26 percent in five years[,] 37 percent in [10] years," and 45 percent in 20 years. CP at 82.

Dr. Davis noted that the Static-99R may underestimate "actual risk for reoffense": "The Static-99R does not mirror the Washington SVP [statute] as it provides estimates of risk for *rearrest* for a sexual crime, as opposed to the risk of *committing* another sexually violent offense. . . . It is an empirically established fact that many sex crimes go unreported and thus undetected, rendering re-arrest and re-conviction rates significantly lower than actual re-offense rates." CP at 82 (emphasis in original).

The Static-2002R is a "risk tool designed to evaluate the risk of sexual reconviction based on commonly available demographic and criminal history information." CP at 83. Using the Static-2002R tool, Dr. Davis calculated Vejar's score as a 7, which again "places him in the well

9

above-average risk category for being convicted of another sexual offense." CP at 85. With a score of 7, Vejar is in the 93rd percentile and the "sexual reconviction rate of sex offenders with the same score as his would be expected to be approximately 3.6 times higher than the recidivism rate of the typical sexual offender." CP at 85. Offenders in Vejar's same score and risk category reoffend at a rate of 27 percent in 5 years and a rate of 46 percent over 20 years.

Dr. Davis also evaluated Vejar on the "Violence Risk Scale – Sex Offense Version (VRS-SO)." CP at 86. The VRS-SO is a tool that "combines static and dynamic risk scores . . . to obtain an estimated sexual recidivism rate." CP at 86. Additionally, the VRS-SO looks at 17 dynamic factors measuring lifestyle, social behaviors, personality characteristics, and treatment compliance, all factors that have been "empirically and/or theoretically linked to sexual recidivism." CP at 86. Dr. Davis identified that 10 risk factors were present for Vejar and two were partially present. Some of the present factors included "Sexually Deviant Lifestyle," "Sexual Compulsivity," "Impulsivity," and "Deviant Sexual Preference." CP at 86-87, 89.

Dr. Davis also scored Vejar on the Hare Psychopathy Checklist (PCL-R). Based on the two-hour videotaped interview between Vejar and police department detectives, Dr. Davis determined that Vejar falls within the "[m]oderate" range for psychopathy. CP at 90. Further, Vejar lacked protective risk factors which would decrease his risk of further sexual re-offense. Dr. Davis concluded:

> Mr. Vejar scored in the well above-average range of risk of sexual reoffense on two actuarial measures. He possesses a number of significant dynamic risk factors, and no protective factors. He has reoffended with three recent overt acts even after completing two sex offender treatment programs. Taking all these factors into consideration, it is my opinion Mr. Vejar is at a high risk for sexual reoffense. Therefore, I opine that he is likely to engage in future predatory acts of sexual violence.

10

CP at 91 (underlining omitted).

> 3.    Probable Cause Hearing and Appeal

On July 24, 2023, the State filed a petition seeking to involuntarily commit Vejar as an SVP. On July 26, at an ex parte proceeding, the trial court determined there was probable cause that Vejar was an SVP. The trial court then ordered that an adversarial probable cause hearing occur within 72 hours to provide Vejar the opportunity to contest probable cause. *See* RCW 71.09.040. Following the order for an adversarial probable cause hearing, Vejar's case was reassigned to another judge.

After the reassignment, the trial court held an adversarial probable cause hearing on August 3. The State argued, based on Dr. Davis's evaluations, probable cause existed that Vejar was an SVP. Vejar argued, on the other hand, that Dr. Davis made conclusory statements and there was no "nexus" between Vejar's mental abnormality and future violent predatory sexual offenses. 1 Verbatim Rep. of Proc. (VRP) at 15. Vejar contended that at most, his mental abnormality would only "lead to him butt-grabbing, which is not a sexually violent offense." 1 VRP at 20. Vejar further argued that the actuarial tools Dr. Davis used projected his potential recidivism at well below 50 percent.

The trial court determined that the State did not make a prima facie showing that Vejar's mental abnormality would lead him to commit future violent predatory sexual offenses. The trial court stated: "We're missing that piece that helps me bridge the gap between what he has been diagnosed with, the antisocial personality disorder combined with the frotteuristic disorder, that

leads him to an act of sexual predatory violence. That's what Dr. Davis failed to do." 1 VRP at 28-29.

The State requested the trial court set over entry of the court's order denying probable cause until the afternoon based on emergency motions it wanted to pursue, along with a potential stay for appellate purposes. The trial court agreed.

During the afternoon court session, the State made an oral motion for reconsideration. The State based its motion of Dr. Davis's July 7 evaluation update, where Dr. Davis noted that Vejar appeared to have a preoccupation with the rear end of the woman he raped in 1999 and that fact provided a nexus between Vejar's diagnosis and predatory acts of sexual violence. The trial court declined to change its ruling.

The State then asked for a 24-hour stay of enforcement so it could present further evidence from Dr. Davis. The State also noted it was planning to pursue an emergency appeal. The trial court agreed to a 24-hour stay. The trial court then entered an order denying probable cause which stated that 24 hours from its entry, Vejar could be released unless notified otherwise by court order. Under its conclusions of law, the order stated:

> At this time, [t]here is not probable cause to believe that [Vejar] is a sexually violent predator as defined in RCW 71.09.020(19). The State has failed to make a prima facie showing that there is a nexus between the diagnoses and a future act of sexual predatory violence, as defined by statute.

CP at 127. The order further stated:

1. The petition seeking the involuntary civil commitment of [Vejar] as a sexually violent predator pursuant to RCW 71.09 *et seq.* is DISMISSED w/out prejudice.

2. [Vejar] shall be released from this cause number on August 4, 2023 no earlier than 3 pm, unless otherwise notified by court order.

CP at 127.

On August 4, the State filed a notice of appeal to this court of the trial court's order denying probable cause. The State also filed an emergency motion for a stay pursuant to RAP 8.1. We granted a temporary stay.

However, we questioned whether the trial court's order denying probable cause was appealable as a matter of right under RAP 2.2(a) because the trial court had dismissed the matter without prejudice. The State argued that the order was appealable as a matter of right. Vejar argued that the trial court's order was not appealable as a matter of right and that discretionary review was not appropriate.

Also on August 4, the State filed a motion for reconsideration in the trial court and asked the trial court to permit the State to supplement the record with additional evidence from Dr. Davis. The State attached an addendum from Dr. Davis to her July 7, 2023 evaluation of Vejar.[2]

On August 7, the State filed a motion to permit the trial court to consider a motion for reconsideration and to supplement the emergency motion for a stay in the court of appeals. We granted the State's request to permit the trial court to consider the motion for reconsideration, but we denied the State's request to supplement the emergency motion as premature.

On August 9, the trial court denied the State's motion for reconsideration. The State filed a notice of appeal of the order denying the motion for reconsideration.

---

[2] Dr. Davis's addendum specifically focused on "the nexus between the mental abnormalities [she] diagnosed for . . . Vejar and the likelihood he will commit a future sexually violent predatory offense." CP at 135. Dr. Davis opined that Vejar's mental abnormalities make him likely to engage in predatory acts of sexual violence.

On August 10, the State filed a motion in this court requesting the ability to supplement the appendix to the emergency motion for stay in light of the trial court's denial of reconsideration. We granted the motion.

On August 15, we granted the State's request for a stay. We also determined that the trial court's order dismissing the State's petition without prejudice was not final and, therefore, subject to discretionary review. Accordingly, we granted discretionary review of the trial court's order denying probable cause, and as a "means of mitigating the prejudice to Vejar," accelerated review. Ruling on Mot. for Stay at 5 (Wash. Ct. App. Aug. 15, 2023).

ANALYSIS

The State argues that the trial court erred when it concluded that the State failed to establish probable cause that Vejar is an SVP and when the trial court denied the State's motion for reconsideration. Vejar argues that the State has failed to show a nexus between his "mental illness" and a future risk of predatory sexual violence and that we should affirm the trial court. Br. of Resp't at 6. We agree with the State.

A.    LEGAL PRINCIPLES

Washington's Sexually Violent Predator Act (SVPA), chapter 71.09 RCW, permits the State, in limited circumstances, to civilly commit individuals determined to be sexually violent predators. *In re Det. of Post*, 170 Wn.2d 302, 309, 241 P.3d 1234 (2010); *see* RCW 71.09 et seq.

Generally, for an individual to be civilly committed as an SVP, the State must show "(1) that the [person] 'has been convicted of or charged with a crime of sexual violence,' (2) that the [person] 'suffers from a mental abnormality or personality disorder,' and (3) that such abnormality or disorder 'makes the person likely to engage in predatory acts of sexual violence if not confined

14

in a secure facility.'" *Post*, 170 Wn.2d at 310 (quoting RCW 71.09.020(19)). The third element is a "compound determination" that requires a finding of causation and "'the probability of the defendant's reoffending exceeds 50 percent.'" *Id.* (quoting *In re Det. of Brooks*, 145 Wn.2d 275, 298, 36 P.3d 1034 (2001), *overruled on other grounds by In re Det. of Thorell*, 149 Wn.2d 724, 72 P.3d 708 (2003), *cert. denied*, 541 U.S. 990 (2004)).

Under the SVPA, a "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(9). A "personality disorder" is "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has onset in adolescence or early adulthood, is stable over time and leads to distress or impairment." RCW 71.09.020(10).

Predatory acts include those that are directed towards strangers or "persons of casual acquaintance with whom no substantial personal relationship exists." RCW 71.09.020(11)(a), (c). Sexually violent acts include first or second degree rape, indecent liberties by forcible compulsion, and first or second degree child molestation, among others. RCW 71.09.020(18). An individual who is "'[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility'" means an individual who "more probably than not will engage in such acts if released unconditionally from detention on the [SVP] petition. Such likelihood must be evidenced by a recent overt act if the person is not totally confined at the time the petition is filed." RCW 71.09.020(8). A "recent overt act" is "any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind

15

of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(13).

To civilly commit individuals under the SVPA, the State first must file a petition alleging an individual is an SVP. *See* RCW 71.09.030. Once a petition has been filed, a judge determines whether probable cause exists that the person is an SVP. RCW 71.09.040(1). The individual has a right to contest probable cause in a probable cause hearing. RCW 71.09.040(2). "At the probable cause hearing, the state may rely upon the petition and certification for determination of probable cause filed pursuant to RCW 71.09.030" and "may supplement this with additional documentary evidence or live testimony." RCW 71.09.040(2).

Courts may look "beyond an expert's stated conclusion to determine whether [the conclusion] is supported by sufficient facts. Mere conclusory statements are insufficient to establish probable cause." *In re Det. of Jacobson*, 120 Wn. App. 770, 780, 86 P.3d 1202 (2004). An expert's report in support of an SVP petition is not necessarily deficient if it fails to include a personal interview with the individual, particularly if the expert "uses methods and documents that are often used in this type of evaluation, cites to current behaviors and diagnoses," and based on that information, makes a conclusion to a "reasonable psychological certainty." *Id.* at 782. If probable cause exists that a person is an SVP, "the court shall conduct a trial to determine whether the person is a[n] [SVP]" beyond a reasonable doubt. RCW 71.09.050(1); *Thorell*, 149 Wn.2d at 744.

During probable cause hearings, however, the State need only demonstrate prima facie evidence of the above elements. *In re Det. of Petersen*, 145 Wn.2d 789, 797, 42 P.3d 952 (2002). The "probable cause standard is not a stringent one." *State v. McCuistion*, 174 Wn.2d 369, 382,

275 P.3d 1092 (2012), *cert. denied*, 568 U.S. 1196 (2013); *accord Petersen*, 145 Wn.2d at 797 ("A trial standard of proof has no application to probable cause determinations.").

Under the probable cause standard, courts assume the truth of the evidence presented. *McCuistion*, 174 Wn.2d at 382. Courts are entitled to consider all the evidence. *In re Pers. Restraint of Meirhofer*, 182 Wn.2d 632, 638, 343 P.3d 731 (2015). However, courts do not weigh the evidence; instead, a court "'must determine whether the asserted evidence, if believed, is *sufficient* to establish the proposition its proponent intends to prove.'" *Id.* (emphasis in original) (quoting *McCuistion*, 174 Wn.2d at 382). Appellate courts review determinations of probable cause de novo. *McCuistion*, 174 Wn.2d at 382.

B.    PRIMA FACIE SHOWING OF NEXUS BETWEEN MENTAL ABNORMALITY AND FUTURE ACTS OF PREDATORY SEXUAL VIOLENCE

The State argues that it made a prima facie showing on all elements that Vejar is an SVP. Vejar argues that the State did not meet its burden on the third element because the State established only a link between Vejar's "mental condition and a risk that he might commit offenses that do not amount to predatory acts of sexual violence." Br. of Resp't at 7. Vejar makes no argument as to the other elements. Accordingly, the only issue before this court is the third element. Therefore, this opinion addresses only the third element.[3]

---

[3] In his response brief, Vejar makes the statement: "For this appeal only, Mr. Vejar presents no argument on issues unrelated to [the trial court]'s decision." Br. of Resp't at 8. It is not clear if Vejar is attempting to preserve errors for future appeal. Regardless, here, the trial court effectively found that the State met its burden as to the other elements when the trial court stated that it was only "missing that piece that . . . bridge[s] the gap between what [Vejar] has been diagnosed with . . . that leads him to an act of sexual predatory violence." 1 VRP at 29. In other words, the only reason the trial court did not find probable cause was because the State allegedly failed to meet its burden as to the third element. Indeed, the record shows, and Vejar did not dispute, that (1) Vejar was previously convicted of a sexually violent crime; and (2) Vejar has a personality disorder or

As a threshold matter, the State argues that this court's review is de novo while Vejar argues that this court's review is for abuse of discretion. Vejar cites to *Thorell* to support his proposition. However, Vejar misconstrues *Thorell*.

The court in *Thorell* stated, "While we have not previously established the standard of review for sufficiency of the evidence in SVP proceedings, we have assessed probable cause in SVP commitments under a criminal standard." 149 Wn.2d at 744. *Thorell* then cites to *Petersen*, wherein the court discusses the probable cause standard insofar as it is a standard familiar to judges in a Fourth Amendment context. *Petersen*, 145 Wn.2d at 797. The *Petersen* court explicitly states: "A trial court's legal conclusion of whether evidence meets the probable cause standard is reviewed *de novo*." *Id.* at 799 (emphasis added).[4] Therefore, our review of the trial court's probable cause determination is de novo.

The State argues the facts and conclusions contained in Dr. Davis's evaluations demonstrate that Vejar's mental abnormality makes him more likely than not to commit an act of predatory sexual violence. Specifically, the State contends that Dr. Davis carefully explained how Vejar's mental abnormality impacts his "emotional and volitional capacity," thereby causing him

---

mental abnormality. Vejar also acknowledged at oral argument that he has a mental abnormality. *See* Wash. Ct. of Appeals oral argument, *In re the Detention of: Andrew Vejar*, No. 62596-2-II (Jan. 29, 2024), *recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[4] Vejar also cites to *State v. Scherf*, 192 Wn.2d 350, 363, 429 P.3d 776 (2018), in support of his contention that this court's review of a probable cause determination is for an abuse of discretion. However, *Scherf* dealt with an inmate who had been sentenced to death based on his aggravated murder of a prison guard while serving a life sentence and a *magistrate's* determination of probable cause in a matter unrelated to the SVPA. *See* 192 Wn.2d at 360-63. As such, *Scherf* has no bearing on the issue before this court.

"serious difficulty controlling his sexually violent behavior[] and predisposes him to the commission of criminal sexual acts." Br. of Appellant at 30. Furthermore, the State asserts that Dr. Davis's risk assessments of Vejar also demonstrate he is at high risk to engage in predatory sexually violent behavior.

Vejar argues that Dr. Davis makes conclusory statements and that the facts do not show that Vejar's mental illness "creates a greater-than-50% likelihood that he will commit predatory acts of sexual violence in the future." Br. of Resp't at 9-10 (footnote omitted). Specifically, Vejar argues that Dr. Davis did not diagnose him with paraphilia or pedophilia and that a "propensity to grab a person's buttocks does not establish a likelihood of predatory acts of sexual violence." Br. of Resp't at 11.

Here, the record shows that Vejar has been diagnosed with antisocial personality disorder, frotteurism, and fetishistic disorder. Dr. Davis' reports supported each diagnosis with specific facts, such as details from Vejar's extensive criminal record; the 2008 and 2023 incidents where he pinched or grabbed women's and girls' buttocks; and Vejar's fixation on women's buttocks, as evidenced by facts such as Vejar grabbing and taking pictures of his rape victim's buttocks, his notes on women's bottoms that he has grabbed, and his cell phone search terms.

Dr. Davis noted that Vejar's repeated frotteuristic behavior with multiple victims "indicates both that he found the conduct gratifying and that he experienced urges to repeat the experiences." CP at 78. The fact that in January 2023—weeks after his release from community custody—Vejar grabbed women's and girls' buttocks within the space of a month "indicates the urges to grab and touch the victims were intense." CP at 78.

19

Moreover, Dr. Davis opined that Vejar's difficulty in controlling his urges is demonstrated by the fact that Vejar spent 20 years in prison for a sexual offense "and yet sexually reoffended." CP at 80. Vejar was sanctioned for sexual misconduct twice while in the custody of the DOC. Furthermore, Vejar participated in, and successfully completed, *two separate* SOTPs, which appeared to have had little effect on his subsequent conduct.

Dr. Davis's risk assessments also demonstrate that Vejar is at high risk of reoffending. For instance, Vejar's score of 6 on the Static-99R placed him in the "well above-average risk category for being charged or convicted of another sexual offense" and in the 94th percentile for risk of re-offense as compared to other male sex offenders. CP at 82. Based on Vejar's score, he is projected to be 3.8 times more likely to reoffend than a typical sex offender. Additionally, individuals with Vejar's score have been found to reoffend at a rate of 26 percent in five years, 37 percent in 10 years, and 45 percent in 20 years. "However, the [SVPA] does not limit experts to the results of actuarial tests and there is no requirement that 'the SVP will reoffend in the foreseeable future.'" *Meirhofer*, 182 Wn.2d at 645 (quoting *In re Det. of Moore*, 167 Wn.2d 113, 125, 216 P.3d 1015 (2009)).

Of note, the Static-99R measures re-arrest, charging, and conviction, not *re-offense*. Accordingly, it follows that the Static-99R underestimates Vejar's risk of *committing* another violent sexual offense. *See also Meirhofer*, 182 Wn.2d at 640 n.4 ("Static tests such as the Static-99R underestimate the probability of future sexual misconduct because they do not actually measure the probability that an offender will commit another sexual offense; they instead predict whether an offender will be caught for a new sexual offense by being arrested, convicted, or, in some cases, by self-report recidivism.").

Vejar argues that "[h]is mental illness means that he is likely to offend, but nothing in Dr. Davis's report shows that his disorders will *cause* him to commit *qualifying* acts"—particularly because grabbing women's buttocks is not, in and of itself, sexually violent conduct. Br. of Resp't at 13 (emphasis in original). However, the record shows that Vejar specifically searched the start times of the local middle school and high school and that he grabbed the buttocks of a 12-year-old girl on her way to school. Even though Vejar was charged with and convicted of fourth degree assault for grabbing the 12-year-old, his underlying conduct qualifies as second degree child molestation.[5] *See* RCW 9A.44.086. Second degree child molestation is a sexually violent offense under the SVPA. RCW 71.09.020(18). Thus, Vejar's argument that his disorder would not cause him to commit qualifying acts is unpersuasive.

The State's burden in a probable cause hearing is to present prima facie evidence. *Petersen*, 145 Wn.2d at 797. This means that courts assume the truth of the evidence presented. *McCuistion*, 174 Wn.2d at 382. Courts do not weigh the evidence; rather, courts determine whether the evidence, if believed, is sufficient to establish the proposition the State intends to prove. *Meirhofer*, 182 Wn.2d at 638. The "probable cause standard is not a stringent one." *McCuistion*, 174 Wn.2d at 382. The State *does not* need to prove the elements beyond a reasonable doubt—that is for a commitment trial. *Post*, 170 Wn.2d at 309.

---

[5] Second degree child molestation occurs "when [a] person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.086(1). "Sexual contact" includes "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13).

Here, the State presented evidence that Vejar has mental abnormalities, those mental abnormalities cause him difficulty in controlling his conduct, the conduct qualifies as sexually violent offenses under the SVPA, and Vejar is at high risk of committing future predatory sexually violent acts. If this evidence is to be believed, it is more than sufficient to establish the proposition that Vejar's mental abnormality makes him more likely than not to commit an act of predatory sexual violence. Therefore, the State has presented prima facie evidence of the third element.

## CONCLUSION

We hold that, based on the evidence presented and the applicable legal standards, the trial court erred when it determined the State failed to show probable cause and, accordingly, erred when it denied the State's motion for reconsideration. Thus, we reverse and remand to the trial court to proceed with an SVP commitment trial in accordance with RCW 71.09.050.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, J.
Lee, J.

We concur:

_____
Glasgow, C.J.

_____
Che, J.